UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHET PRUITT, | No. 2:20-cv-0632 KJM AC P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| MANJULA BOBBALA, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding through counsel with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court are Defendants' motions to dismiss, ECF Nos. 29, 30, and Plaintiff's motion to amend, ECF No. 33.

I. Procedural History

Plaintiff filed his original complaint on March 23, 2020.  ECF No. 1.  The complaint named four defendants—Manjula Bobbala, M.D.; S. Gates, Chief of Health Care Appeals for California Correctional Health Care Services; Jeff Lynch, Acting Warden of California State Prison – Sacramento; and the State Compensation Insurance Fund—and alleged five grounds for relief.  Id.  The complaint was screened, and the undersigned recommended that Defendant State Compensation Insurance Fund and Claims 2 through 5, which alleged claims against the State Compensation Insurance Fund only, be dismissed without prejudice.  ECF No. 7.  The findings
////

1

and recommendations were adopted in full and the case proceeded on Plaintiff's Eighth Amendment claims against Defendants Bobbala, Gates, and Lynch. ECF No. 27.

In response to the complaint, Defendants Lynch and Gates filed a motion to dismiss on the ground that Plaintiff failed to state a claim for relief. ECF No. 29. Defendant Bobbala also filed a motion to dismiss on the grounds that Plaintiff failed to state a claim and failed to exhaust his administrative remedies. ECF No. 30. Plaintiff opposed the motions to dismiss, ECF Nos. 34, 35, and filed a motion to amend the complaint, ECF No. 33. The motion to amend seeks to add additional claims and an additional defendant, id., and is opposed by Defendants, ECF Nos. 39, 40.

## II.      Allegations of the Original Complaint

On December 7, 2018, Plaintiff suffered a torn ligament in his right foot. ECF No. 1 at 6, ¶ 20. On February 22, 2019, he underwent an MRI of the ankle, which revealed "tendinosis of the peroneus tendons with a partial tear of the peroneus brevis." Id., ¶ 21. Between the date of the injury and May 2019, Plaintiff was diagnosed with a serious medical issue that required he be seen by a doctor at a private hospital. Id., ¶ 22. He was seen by Dr. Harf, an outside medical provider, via telemed, and on May 31, 2019, Dr. Harf recommended that for a three-month period Plaintiff utilize an ankle/foot brace to stabilize the foot and allow it to heal. Id. Per Dr. Harf, if that failed to fix the issue then Plaintiff might need to undergo surgery, but it was "unreasonable to just take this individual to surgery for the procedures" and he should be reevaluated for surgery depending upon his improvement. Id. at 6-7, ¶ 22.

Plaintiff initiated a 602 institutional healthcare grievance on the handling of his ankle injury, and on August 23, 2019, Dr. Bobbala signed the institutional-level response recommending "no intervention" in response to Plaintiff's appeal. Id. at 2, 4, 29-30. The response stated that Plaintiff had a "confirmed telemed orthopedic surgery specialist referral made on a routine basis." Id. at 30. Plaintiff then sought a review of the institutional-level decision. Id. at 4, ¶ 12. On November 25, 2019, Defendant Gates signed the headquarters-level response to the appeal, recommending "no intervention." Id. at 3-5, 32-33. The response stated that plaintiff had been seen by his primary care provider on November 8, 2019, and that a plan of

care had been developed that included "orthopedic surgeon consultations . . . and orthopedic surgeon reevaluation." Id. at 33. On January 27, 2020, Plaintiff was again seen by Dr. Harf, who recommended surgery. Id. at 7, ¶ 24.

Plaintiff alleges that "Defendants allowed medical staff to delay proper review from the period December 7, 2018 [date of incident], to May 31, 2019." Id. at 8, ¶ 28 (brackets in original). He further alleges that between May 31, 2019, and the filing of the complaint Defendants violated his rights "by not timely-implementing [sic] Dr. Harf's treatment plan of May 31, 2019." Id. at 9, ¶ 30. Defendant Lynch is named in his official capacity as warden for the purposes of obtaining injunctive relief, id. at 3, ¶ 7, and in his individual capacity for damages, id. at 5, 23, ¶¶ 17, 1.

### III. Defendants' Motions to Dismiss

#### A. Legal Standard for a Motion to Dismiss under FRCP 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss an action for "failure to state a claim upon which relief can be granted." To survive a dismissal motion brought under Rule 12(b)(6), a complaint must be plausible on its face, meaning that it provides sufficient factual detail that it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). "Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011) (citation omitted).

In considering a motion to dismiss, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005) (citation omitted). However, the court need not accept "conclusory allegations of law and unwarranted inferences." Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004) (citation omitted). In ruling upon a motion to dismiss under Rule 12(b)(6), the court is generally confined by the facts contained in the four corners of the complaint and must normally convert the motion to one for summary judgment under Rule 56 if it considers evidence outside the pleadings. United States v. Ritchie, 342 F.3d 903, 907 (9th Cir.

2003). Documents attached to the complaint or incorporated by reference may be considered without converting the motion. Id.

### B. Legal Standard for Deliberate Indifference to a Serious Medical Need

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "First, the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."' Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

"Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" Id. (quoting McGuckin, 974 F.2d at 1059). "Mere indifference, negligence, or medical malpractice" will not support a claim of deliberate indifference. Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1082 (9th Cir. 2013) (internal quotation marks omitted) (quoting Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)). A difference of opinion between inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (citations omitted); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted). To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).

### C. Defendants Lynch and Gates' Motion to Dismiss

Defendants Lynch and Gates move to dismiss Plaintiff's claims against them for failure to state a claim. ECF No. 29. They argue that Plaintiff failed to allege that Warden Lynch had any involvement in the review of Plaintiff's healthcare grievances or that he had any authority to overrule the decisions of medical staff. ECF No. 29-1 at 4-5. They contend that Plaintiff has

failed to show that Lynch is an appropriate defendant for purposes of injunctive relief because healthcare decision are made solely by healthcare staff and supervisors. Id.  With respect to Defendant Gates, the Chief of Healthcare Appeals for CDCR, they argue that Plaintiff failed to demonstrate that Gates would have been aware of an ongoing constitutional violation based on the record before her. Id. at 5-6.

Plaintiff argues that the motion should be denied because the allegations in the original complaint are sufficient to state claims for relief against Lynch and Gates. ECF No. 34 at 5-10. However, he concedes that he does not have a claim for damages against Lynch and instead argues that Lynch is named solely for the purpose of obtaining injunctive relief and that he has removed the request for damages in the proposed first amended complaint.[1] ECF No. 34 at 5-8. He argues that Lynch is an appropriate defendant for injunctive relief because the delay in access to his surgery was caused by denials based on budgetary reasons, rather than medical concerns. Id. at 8.

The Ninth Circuit has held that

> a corrections department secretary and prison warden were proper defendants in a § 1983 case because "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief."

Colwell v. Bannister, 763 F.3d 1060, 1070 (9th Cir. 2014) (alteration in original) (quoting Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013)).  To the extent Plaintiff is seeking injunctive relief in the form of medical care, Defendants have cited statutory authority showing the warden has no control over medical decisions. ECF No. 29-1 at 4 (citing Cal. Code Regs., tit. 15, §§ 3999.132(a), 3999.200(a), 3999.225(x)(2)).  Defendant Lynch's lack

---

[1] Plaintiff requests that the court first rule on his motion to amend because the motions to dismiss will be moot if the motion to amend is granted. ECF No. 34 at 10-11; ECF No. 35 at 11.  Given the substantial similarities between the original and proposed amended complaint, and because it is being recommend that the motion to amend be denied as to the proposed amended complaint, the motions to dismiss will be addressed first.

of control over medical decisions and the allocation of medical resources shows that Lynch cannot "appropriately respond to injunctive relief" requests. Accordingly, Lynch is not a proper defendant from whom Plaintiff can obtain the injunctive relief he seeks.

Plaintiff's allegation against Gates is that she denied his healthcare grievance at the final level of review on November 25, 2019. Even if the court assumes that Plaintiff was suffering from delays in treatment up to that point, there are no allegations showing that Gates had any involvement in or awareness of Plaintiff's treatment prior to her review of the grievance. Accordingly, she would have had no opportunity to intervene. Without a role in causing the alleged constitutional violation, either directly or by failing to intervene in a known and ongoing violation, there can be no liability. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Furthermore, as Defendants point out, Gates' response indicates that by the time Gates reviewed Plaintiff's records, he had been seen on November 8, 2019, and a plan of care had been established that included "orthopedic surgeon consultations, magnetic resonance imaging scans, and an ankle/foot orthoses, and orthopedic surgeon reevaluation." ECF No. 1 at 33. This demonstrates that when Gates reviewed Plaintiff's records there was already a plan in place to send Plaintiff back to the orthopedic surgeon for a reevaluation, and thus no need to intervene at that time. There are no allegations demonstrating that Gates remained involved in Plaintiff's care or was obligated to ensure that plaintiff was in fact seen by the orthopedic surgeon.

For these reasons, Defendants Lynch and Gates' motion to dismiss should be granted.

      D.  <u>Defendant Bobbala's Motion to Dismiss</u>

Defendant Bobbala moves to dismiss the complaint on the grounds that Plaintiff failed to state a claim and that he has not alleged proper exhaustion of his administrative remedies. ECF No. 30. Dr. Bobbala argues that denying Plaintiff's grievance, the sole allegation against her, cannot rise to the level of deliberate indifference because there are no facts showing that she was subjectively aware of any facts which would indicate that Plaintiff was suffering from an issue that was objectively serious within the meaning of the Eighth Amendment. ECF No. 30 at 5-6. Defendant Bobbala also argues that Plaintiff failed to exhaust his administrative remedies because

1    his grievance was filed too early to properly grieve any of the conduct upon which he bases his
2    complaint. Id. at 7.
3         Plaintiff opposes the motion on the grounds that he has sufficiently stated a claim for
4    relief and that he has sufficiently pled exhaustion. ECF No. 35 at 5-11.

    1. Failure to State a Claim

6         Plaintiff's only allegation against Dr. Bobbala is that she denied his institutional-level
7    healthcare grievance on August 23, 2019. As with Gates, there are no allegations showing that
8    Bobbala had any involvement or awareness of Plaintiff's treatment prior to her response to the
9    appeal such that she had an opportunity to intervene. Nor are there allegations that she was
10   involved or obligated to be involved in his treatment after she responded to the grievance.
11   Furthermore, based on Plaintiff's allegations, at the time Dr. Bobbala responded to his appeal he
12   was still within the ninety-day period for trying a brace, and Dr. Bobbala's response indicates that
13   at the time she reviewed Plaintiff's records he had "a confirmed telemed orthopedic surgery
14   specialist referral made on a routine basis." ECF No. 1 at 29-30. As Dr. Bobbala argues, the
15   facts demonstrate what is, at most, a disagreement as to the appropriate timeline for Plaintiff's
16   medical care. See Toguchi, 391 F.3d at 1058 (difference of opinion as to treatment insufficient
17   to support deliberate indifference claim). Dr. Harf's recommendation was that Plaintiff be
18   reevaluated for surgery after wearing a brace for ninety days, and there are no facts showing that
19   Dr. Bobbala's refusal to send Plaintiff for surgery before that time had passed and without
20   reevaluation by an orthopedic surgeon was medically unacceptable.
21        Defendant Bobbala's motion to dismiss for failure to state a claim should therefore be
22   granted.

    2. Failure to Exhaust

24        Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are
25   subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. Under the PLRA, a
26   prisoner must fully exhaust all available administrative remedies before bringing an action under
27   § 1983. 42 U.S.C. § 1997e(a). However, "failure to exhaust is an affirmative defense under the
28   PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their

1    complaints." Jones v. Bock, 549 U.S. 199, 216 (2007).  "In the rare event that a failure to exhaust
2    is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."
3    Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).
4        Defendant Bobbala contends that Plaintiff failed to properly exhaust his administrative
5    remedies because his grievance was filed and ruled upon before any affirmative surgical
6    recommendation was made by Dr. Harf.  As to the alleged delay in having Plaintiff seen by an
7    outside specialist from December 2018 to May 2019, Defendant argues that the administrative
8    appeal cannot have exhausted the issue because it is alleged in the complaint to have involved
9    other issues.  As to allegedly unconstitutional care from May 2019 to present, Defendant argues
10   that Plaintiff's appeal cannot have exhausted the issues because it was filed at the beginning of
11   that time period.  ECF No. 30 at 7.
12       Plaintiff's healthcare appeal is not attached to the complaint, nor is its language recited, so
13   non-exhaustion is not apparent from the face of the complaint.  See Albino, 747 F.3d at 1166.
14   Without examination of the grievance's contents, the court cannot properly evaluate the question
15   of exhaustion.[2]  Accordingly, the motion to dismiss should be denied to the extent it relies on
16   non-exhaustion, but without prejudice to renewal of the issue in a summary judgment motion
17   pursuant to Albino, supra.
18       IV.   Plaintiff's Motion to Amend
19           A. Legal Standard for a Motion to Amend
20       Under Federal Rule of Civil Procedure 15, a plaintiff may amend the complaint once as a
21   matter of course within "(A) 21 days after serving it, or (B) if the pleading is one to which a
22   responsive pleading is required, 21 days after service of a responsive pleading or 21 days after
23   service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).
24   "In all other cases, a party may amend its pleading only with the opposing party's written consent
25   or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Because Plaintiff is outside both windows for
26   amending as a matter of right and Defendants have not consented to amendment of the complaint,

---

[2] Generally, a grievance suffices to exhaust claims if it alerts the prison to the nature of the wrong for which redress is sought.  See Griffin v. Arpaio, 557 F.3d 1120 (9th Cir. 2009).

8

Plaintiff must obtain leave of the court.

The Federal Rules of Civil Procedure provide that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has construed this language broadly, requiring that leave to amend be granted with "extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). However, "[a] motion to amend should be denied if it is clear the amended pleading would not rectify the failure to state a claim." In re Valley Health Sys., 697 F. App'x 522, 523 (9th Cir. 2017).

### B. Proposed Amended Complaint

Despite the addition of another defendant and additional claims, the proposed amended complaint makes only minimal additions, and substantial portions are identical to the original complaint. Compare ECF No. 1 with ECF No. 33-1 at 10-44. With respect to Plaintiff's proposed additions, he seeks to add Arya, a doctor who treated him at the prison, and extend the deliberate indifference claims to include his medical needs through the date of his surgery and beyond to his post-operative care. ECF No. 33-1 at 13, 20, 24 ¶¶ 9, 31, 41.

#### 1. Defendant Gates

In his motion to amend, Plaintiff confirms that the proposed amended complaint does not make any additional allegations against Defendant Gates. ECF No. 33 at 14. Accordingly, the proposed amended complaint fails to state a claim for relief against Gates for the same reasons discussed above with respect to the original complaint. The proposed amended complaint further supports finding that Plaintiff has failed to state a claim against Gates because it incorporates a timeline that shows he was seen by Dr. Harf again on October 4, 2019, at which time Dr. Harf noted as follows:

> The individual should have some accommodation for the footwear until he is able to use the ankle brace for approximately 3 months. At that time, I would like to see him for a face-to-face consultation . . . If he is not having any improvement at all, then debridement and stabilization of the peroneus brevis will need to be considered.

ECF No. 33-1 at 43 (alteration in original). Therefore, at the time Plaintiff's records were reviewed by Gates, it was still Dr. Harf's recommendation that Plaintiff wear an ankle brace for a three-month period before being considered for surgery.

2. Defendant Lynch

With respect to Defendant Lynch, Plaintiff clarifies that he is not seeking compensatory damages against Lynch, but only injunctive relief.[3] Id. at 12, ¶ 8. However, the request for injunctive relief appears to be moot as the proposed amended complaint states that Plaintiff has received his surgery, id. at 24, ¶ 40, but does not amend the request for injunctive relief, id. at 28, ¶ 56. To the extent Plaintiff seeks additional injunctive relief related to his medical care at the prison, as he indicated during oral argument, he fails to demonstrate that Lynch has the authority to provide the injunctive relief requested. Under California law, he does not.

3. Defendant Bobbala and Proposed Defendant Arya

As to Defendant Bobbala, Plaintiff adds allegations that she

> was directly and personally involved in Plaintiff's treatment through the relevant period of time. Her name is all over Plaintiff's medical records as the person directly involved with the treatment of Plaintiff's foot/ankle. She also directly handled many orders for treatment that was not appropriate. She signed as having reviewed at least many of the Inmate Grievance forms submitted by Plaintiff.

Id. at 12, ¶ 6. Plaintiff also seeks to add Arya, who was allegedly involved in the delay of his treatment and surgery and did not provide him with the appropriate orthopedic equipment such as a wheelchair or brace. Id. at 13, ¶ 9. However, as addressed below, Plaintiff fails to identify any specific instances of either individual's conduct beyond Bobbala's response to his grievance, which is insufficient to support a claim for the reasons previously explained.

Though Plaintiff presents notations from his medical records in an apparent attempt to identify conduct by Bobbala and Arya, the excerpts fail to support a claim for deliberate indifference against either. Most of the notations fail to identify who made them or when they were made. Those notations that do include dates and Bobbala and Arya's names are orders for evaluation to address Plaintiff's inability to use his brace; they indicate that after surgery was recommended in January 2020, it "was delayed due to COVID-19 restrictions in movement and cancellation of elective surgeries." Id. at 20-22, ¶ 31. The timeline of events Plaintiff provides

---

[3] The court notes that the proposed amended complaint still states that Lynch is sued in his individual and personal capacity. ECF No. 33-1 at 15, ¶ 18.

10

also does not indicate what conduct each individual was responsible for, other than Bobbala's denial of his grievance. Id. at 42-44.

Plaintiff further alleges that based on Dr. Harf's initial orders he should have had surgery if wearing a brace for ninety-days did not fix his ankle injury, that he did not get the surgery after ninety days, and that Bobbala and Arya were "[t]he people making the decision on that." Id. at 24, ¶ 39. He asserts that neither Bobbala nor Arya could have overridden Dr. Harf's medical judgment because Dr. Harf was a specialist and they did not have any such specialists employed at the prison. Id. at 23, ¶ 36. However, the quoted language of Dr. Harf's original recommendation states that Plaintiff should be re-evaluated and that surgical intervention would be "[d]epending upon his improvement." Id. at 16, ¶ 23. After re-evaluating Plaintiff in October, Dr. Harf once again recommended three months with a brace and then consideration of surgery if there was still no improvement. Id. at 43. Therefore, there is no indication that the failure to provide Plaintiff with surgery after the original ninety-day period constituted deliberate indifference.

Finally, though Plaintiff states that Defendants failed to implement Dr. Harf's post-surgical orders, the only specific failure Plaintiff identifies is a failure to provide physical therapy. However, Plaintiff also alleges that he was scheduled for physical therapy but did not receive it because he was either not taken or, on the three occasions he did go, it was interfered with by correctional staff. Id. at 25-26, ¶¶ 44-47. It is therefore unclear how either Bobbala or Arya failed to provide Plaintiff with post-surgical care.

For these reasons, Plaintiff has failed to allege the necessary personal involvement by either Arya or Bobbala, though he could potentially fix the identified deficiencies through further amendment.

### C. Conclusion

The motion to amend should be denied as to the proposed first amended complaint.

## V. Conclusion

For the reasons set forth above, the motions to dismiss should be granted and the motion to amend should be denied with respect to the proposed first amended complaint. Because it does

11

not appear that Plaintiff has any further allegations against Defendant Gates and he has failed to show that Defendant Lynch is an appropriate individual to provide the injunctive relief he seeks, the claims against them should be dismissed without leave to amend.  See Cervantes, 656 F.3d at 1041 ("district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile").  However, Plaintiff should be allowed leave to file a first amended complaint to name a proper defendant for injunctive relief and further amend his claims against Bobbala and Arya.

If Plaintiff chooses to amend the complaint, he must allege facts showing how each named defendant is involved.  See Iqbal, 556 U.S. at 678 (the complaint must contain sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (citation omitted)).  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants Lynch and Gates' motion to dismiss, ECF No. 29, be GRANTED.

2. The claims against Defendants Lynch and Gates be DISMISSED without leave to amend.

3. Defendant Bobbala's motion to dismiss, ECF No. 30, be GRANTED on the ground that Plaintiff has failed to state a claim for relief and DENIED without prejudice on the ground that Plaintiff failed to exhaust his administrative remedies.

4. Plaintiff's motion to amend, ECF No. 33, be DENIED as to the proposed first amended complaint.

5. In the event these findings and recommendations are adopted, Plaintiff be GRANTED thirty days to file an amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 22, 2021

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE