Case 2:20-cv-00632-KJM-AC   Document 54   Filed 02/28/23   Page 1 of 10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHET PRUITT,<br><br>    Plaintiff,<br><br>    v.<br><br>MANJULA BOBBALA, et al.,<br><br>    Defendants. | No. 2:20-cv-0632 KJM AC P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding through counsel with a civil rights action pursuant to 42 U.S.C. § 1983.

I.     Procedural History

Plaintiff filed his original complaint on March 23, 2020. ECF No. 1. The complaint named four defendants—Bobbala, Gates, Lynch, and the State Compensation Insurance Fund—and asserted five grounds for relief. Id. The complaint was screened, and findings and recommendations were issued recommending that defendant State Compensation Insurance Fund and Claims 2 through 5, which alleged claims against the State Compensation Insurance Fund only, be dismissed without prejudice. ECF No. 7. The findings and recommendations were adopted in full, and the case proceeded on plaintiff's Eighth Amendment claims against defendants Bobbala, Gates, and Lynch. ECF No. 27.

////

In response to the complaint, Lynch and Gates filed a motion to dismiss on the ground that plaintiff failed to state a claim for relief. ECF No. 29. Bobbala also filed a motion to dismiss on the grounds that plaintiff failed to state a claim and failed to exhaust his administrative remedies. ECF No. 30. Plaintiff opposed the motions to dismiss (ECF Nos. 34, 35) and filed a motion to amend the complaint (ECF No. 33). The motion to amend included a proposed amended complaint, which sought to add Arya, a doctor who treated plaintiff at the prison, and extend the deliberate indifference claims to include plaintiff's medical needs through the date of his surgery and beyond to his post-operative care. ECF No. 33-1. The undersigned recommended that the motions to dismiss be granted, the claims against Lynch and Gates be dismissed without leave to amend, plaintiff's motion to amend be denied as to the proposed first amended complaint, and plaintiff be granted an opportunity to file an amended complaint. ECF No. 43. The findings and recommendations were adopted in full. ECF No. 48. Plaintiff has now filed a first amended complaint (ECF No. 49) and a request for screening (ECF No. 52), and the parties have a stipulated request that defendants not be required to respond to the amended complaint until it has been screened (ECF No. 53).

II.     Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity," 28 U.S.C. § 1915A(a), regardless of whether plaintiff is represented by counsel, In re Prison Litig. Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997) ("District courts are required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel, as [§ 1915A] does not differentiate between civil actions brought by prisoners."). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

Cir. 1984). "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'" Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Franklin, 745 F.2d at 1227-28 (citations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted). "[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

III.    First Amended Complaint

The first amended complaint alleges that defendants Bobbala and Arya, who were part of plaintiff's care team, violated plaintiff's rights under the Eighth Amendment when they failed to provide appropriate care for an injury he sustained while working. ECF No. 49.

On December 7, 2018, plaintiff suffered a torn ligament in his right foot. Id. at 6. He had an x-ray taken the same day that showed "severe soft tissue swelling" with no fractures. Id. On the day of the injury, Bobbala wrote plaintiff an order for ice, though she did not ensure he received any ice, and a few days later she wrote another order for ice and a lay-in from work. Id. at 10. Plaintiff appears to allege that another doctor also wrote lay-in orders and that those also went through Bobbala. Id. He further alleges that both Bobbala and Arya failed to provide medical lay-ins from plaintiff's work assignment, though they wrote orders for ice to help reduce swelling. Id. at 9.

On December 21, 2018, Arya changed another doctor's order for an AirCast for four to six weeks to a CAM boot for fourteen days, though plaintiff later alleges it was ordered for twenty-one days. Id. at 9, 17. Bobbala was also "involved in Plaintiff NOT receiving an AirCast." Id. On February 22, 2019, plaintiff underwent an MRI of the ankle, which revealed "tendinosis of the peroneus tendons with a partial tear of the peroneus brevis." Id. at 6, 10. Arya and Bobbala then ordered plaintiff a brace, but the brace plaintiff received was for the wrong foot. Id. at 10.

On May 31, 2019, plaintiff was seen via telemed by Dr. Harf, an outside medical provider. Id. at 6. Dr. Harf recommended that for a three-month period plaintiff utilize an ankle/foot brace to stabilize the foot and allow it to heal and that plaintiff may need surgery if that failed to fix the issue. Id. at 6-7. He further noted that it was "unreasonable to just take this individual to surgery for the procedures" without first trying the brace and that plaintiff should be re-evaluated for surgery depending upon his improvement. Id. at 7. Plaintiff alleges that defendants "allowed medical staff to delay proper review" from the date of the injury until he was seen by Dr. Harf. Id. at 12.

Plaintiff initiated a 602 institutional healthcare grievance on the handling of his ankle injury, and on August 23, 2019, Bobbala signed the institutional-level response recommending

"no intervention" in response to plaintiff's appeal. Id. at 2-3, 29-30. The response stated that plaintiff had a prescription for pain medication through October 22, 2019, and a "confirmed telemed orthopedic surgery specialist referral made on a routine basis." Id. at 30.

According to plaintiff's incorporated timeline, he had another telemed appointment with Dr. Harf on October 4, 2019, at which time Dr. Harf noted as follows:

> The individual should have some accommodation for the footwear until he is able to use the ankle brace for approximately 3 months. At that time, I would like to see him for a face-to-face consultation . . . If he is not having any improvement at all, then debridement and stabilization of the peroneus brevis will need to be considered.

Id. at 36.

On January 27, 2020, plaintiff was again seen by Dr. Harf, who recommended surgery, which ultimately took place on November 5, 2020. Id. at 7, 18. Plaintiff alleges that defendants finally allowed his surgery to take place because he filed the instant lawsuit. and that allowing the surgery to take place is "an adoptive admission that indeed the surgery should have been done earlier." Id. at 12. Post-surgery, Arya did not provide proper physical therapy or appropriate orthopedic equipment such as a wheelchair or brace. Id. at 3.

Plaintiff alleges that defendants "were the ones who directly and personally made the decision to not comply with the outside doctor's recommended process of waiting 90 days from May 31, 2019 to see if surgery was appropriate." Id. at 8. He further alleges that between May 31, 2019, and the filing of the first amended complaint, defendants violated his rights "by not timely-implementing [sic] Dr. Harf's treatment plan of May 31, 2019," and that they "allowed medical staff to not provide plaintiff with a brace" and "provided no meaningful treatment or pain management." Id. at 13.

IV.    Discussion

The first amended complaint is largely identical to the proposed first amended complaint that accompanied plaintiff's motion to amend (compare ECF No. ECF No. 33-1 with ECF No. 49), the one notable exception being a handful of additional allegations against Bobbala and Arya (ECF No. 49 at 8-12, ¶¶ 29-48). However, as addressed below, the first amended complaint, like the proposed amended complaint, fails to state any claims for relief.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "First, the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."' Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

"Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" Id. (quoting McGuckin, 974 F.2d at 1059). "Mere indifference, negligence, or medical malpractice" will not support a claim of deliberate indifference. Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1082 (9th Cir. 2013) (internal quotation marks omitted) (quoting Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)). A difference of opinion between inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (citations omitted); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted). To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).

The main focus of plaintiff's allegations appears to be the failure to send him for surgery ninety days after his first appointment with Dr. Harf, which he asserts was based on the decision of defendants Bobbala and Arya. ECF No. 49 at 8-9, 17, 22. Plaintiff further alleges that neither Bobbala nor Arya could have overridden Dr. Harf's medical judgment because Dr. Harf was a specialist whom they had chosen to rely on because the prison did not employ an appropriate specialist. Id. at 16-17. However, as the court previously explained, the facts and circumstances presented do not indicate that the failure to provide surgery after expiration of the original ninety-day period constituted deliberate indifference. See ECF No. 43 at 11. Dr. Harf's original

1    recommendation states that plaintiff should be *re-evaluated* after ninety days and that surgical
2    intervention may be required "[d]epending upon his improvement." ECF No. 49 at 7 (quoting
3    Harf recommendation)). Moreover, when Dr. Harf re-evaluated plaintiff in October,
4    approximately four months after the initial appointment, he *once again* recommended three
5    months with a brace, with consideration of surgery to follow if there was still no improvement
6    (id. at 36 (quoting Harf recommendation)). Accordingly, there is no indication that the failure to
7    schedule plaintiff for surgery ninety days after his first appointment with Dr. Harf was contrary to
8    Dr. Harf's recommendation, let alone deliberately indifferent.

9        To the extent plaintiff attempts to allege that defendants were also responsible for
10   delaying his surgery because the brace he initially received was for the wrong foot, they "allowed
11   medical staff to not provide plaintiff with a brace," and they "allowed medical staff to delay
12   proper review" until he was seen by Dr. Harf (id. at 10, 12, 13), there are no facts demonstrating
13   that either defendant purposely ordered plaintiff the wrong brace or explaining how they were
14   involved with the conduct of other medical staff. See Jett, 439 F.3d at 1096 (delay or interference
15   must be intentional); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) ("Liability under
16   § 1983 must be based on the personal involvement of the defendant." (citing May v. Enomoto,
17   633 F.2d 164, 167 (9th Cir. 1980)); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is
18   no respondeat superior liability under section 1983." (citation omitted)). Plaintiff's claim that his
19   surgery only took place because of this lawsuit is similarly unsupported by any fact and in fact
20   appears to be contradicted by the record since the complaint was not ordered served until four
21   days after plaintiff's surgery took place. See ECF No. 7 (ordering service of original complaint).

22       Plaintiff also attempts to demonstrate that defendants were deliberately indifferent with
23   respect to the treatment he received at the prison. To support this claim, plaintiff once again
24   presents notations from his medical records in an apparent attempt to identify conduct by Bobbala
25   and Arya. Id. at 13-15. However, as the court previously found, the notations do nothing to
26   support a claim for deliberate indifference. ECF No. 43 at 10. The majority of the notations fail
27   to identify who made them, when they were made, or what plaintiff's condition was at the time.
28   ECF No. 49 at 15. Those notations that do include dates and Bobbala and Arya's names indicate

orders for evaluation to address plaintiff's inability to use his brace and that after surgery was recommended in January 2020, it "was delayed due to COVID-19 restrictions in movement and cancellation of elective surgeries." Id. at 13-15. The timeline of events plaintiff provides is similarly unhelpful as it does not indicate what conduct each individual was responsible for, other than Bobbala's denial of his grievance. Id. at 35-37.

Though the amended complaint does allege some additional conduct by defendants, the allegations fail to support deliberate indifference by either defendant. Plaintiff alleges that Bobbala and Arya "failed to write medical lay-ins" (id. at 9), but it is unclear when these failures occurred and if they denied requests for lay-ins or simply did not issue them automatically. Moreover, the complaint states that shortly after the injury, Bobbala and another doctor provided plaintiff with lay-in orders. Id. at 9-10. Plaintiff also alleges that Bobbala and Arya ordered him ice "but never gave him any, or helped him get any." Id. at 9. However, there are no facts showing they were aware that plaintiff did not get the ice they ordered for him. Plaintiff's allegations that Arya changed another doctor's AirCast for a shorter period with a CAM boot (id. at 9, 17) also fails to state a claim because, even if true, it demonstrates no more than a difference of opinion as to the proper treatment. See Sanchez, 891 F.2d at 242 (difference of opinion regarding treatment does not establish deliberate indifference (citations omitted)).

Plaintiff's allegation that Bobbala denied his institutional-level healthcare grievance on August 23, 2019, also fails to state a claim for relief. He does not identify what issues he raised in his grievance, and the response indicates that the grievance sought an accelerated surgery date. ECF No. 49 at 29. Bobbala responded to the appeal while plaintiff was still within the original ninety-day period for trying a brace, and the response indicates that at the time Bobbala reviewed plaintiff's records he had "a confirmed telemed orthopedic surgery specialist referral made on a routine basis." Id. at 29-30. Based on these facts, Bobbala's denial of plaintiff's grievance establishes, at most, a disagreement as to the appropriate timeline for plaintiff's medical care, and there are no facts showing that the refusal to send plaintiff for surgery prior to his re-evaluation was medically unacceptable. See Toguchi, 391 F.3d at 1058 (difference of opinion as to treatment insufficient to support deliberate indifference claim); Jackson, 90 F.3d at 332 (course of

treatment must be medically unacceptable).

Finally, though plaintiff states that defendants failed to implement Dr. Harf's post-surgical orders, the only failures plaintiff identifies are the failure to provide physical therapy and a wheelchair or brace. However, the medical record notations cited by plaintiff indicate that plaintiff was temporarily assigned by crutches, a wheelchair, and a right leg boot, though it is unclear when exactly he received these items or who ordered them. Id. at 15. With respect to physical therapy, plaintiff alleges that he was scheduled for physical therapy but did not receive it because he was either not taken or, on the three occasions he did go, it was interfered with by correctional staff. Id. at 19-20. The allegations thus do not demonstrate that either Bobbala or Arya failed to provide plaintiff with post-surgical care.

For these reasons, plaintiff has failed to state a claim for relief against either Arya or Bobbala.

V.     No Leave to Amend

Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato v. United States, 70 F.3d 1103, 1105-06 (9th Cir. 1995).

The undersigned finds that, as set forth above, the first amended complaint fails to state a claim upon which relief may be granted. Plaintiff, who is represented by counsel, has already been given an opportunity to amend the complaint and advised what kind of information he needed to provide. Given the lack of additional facts provided by plaintiff and complete failure to cure any deficiencies, it does not appear that further amendment would result in a cognizable claim. As a result, leave to amend would be futile and the first amended complaint should be dismissed without leave to amend.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's request for a screening order (ECF No. 52) is GRANTED to the extent the first amended complaint has been screened.

2. The parties' stipulated request to extend defendant Bobbala's deadline to respond to the complaint (ECF No. 53) is GRANTED.

3. In the even these findings and recommendations are not adopted by the assigned district judge, defendant Bobbala shall respond to the first amended complaint within thirty days of the district judge's order.

IT IS FURTHER RECOMMENDED that the first amended complaint be dismissed without leave to amend for failure to state a claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 28, 2023

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE